IN THE CIRCUIT COURT OF PHILLIPS COUNTY, ARKANSAS
CIVIL DIVISION

LAKEISHA AND SCOTTIE SMITH                                    PLAINTIFFS

V.                                    NO. 54 CV-14-44

TRAVELERS INDEMNITY                                          DEFENDANT
COMPANY OF AMERICA

FILED
FEB 1 0 2014
PHILLIPS COUNTY
By LYNN STILLWELL
CIRCUIT CLERK
D.C.

## COMPLAINT

Come now the Plaintiffs, Lakeisha and Scottie Smith, and for their complaint against

Defendant, Travelers Indemnity Company of America, state:

## I. PARTIES, VENUE AND JURISDICTION

1.      Plaintiffs, Lakeisha and Scottie Smith (hereinafter "the Smiths"), are individuals who

are domiciled in and are residents of Phillips County, Arkansas.

2.      Defendant Travelers Indemnity Company of America (hereinafter "Travelers") is an

entity engaged in the sale of insurance in the State of Arkansas.  Its registered agent for service of

process is Corporation Service Company, 300 Spring Street Building, Suite 900, 300 S. Spring

Street, Little Rock, Arkansas 72201.

3.      Plaintiffs, Lakeisha and Scottie Smith, purchased landlord's commercial insurance

insured by Defendant Travelers Indemnity Company of America.  The Insurance Policy covered a

dwelling rental property located at 432 Kentucky, West Helena, Phillips County, Arkansas.  The

Smiths and this property were insured under said policy at the time of the fire giving rise to this

action.

4.      Jurisdiction is proper within this Court based upon the residence of the parties and

the amount and type of relief sought.

5.      Venue of this action is proper before this Court based upon the residence of the

parties and the location of the incident which resulted in the loss of property within this county.

## II. GENERAL ALLEGATIONS

6.      Exhibit 1 is Insurance Policy Number 93854413 663 1.  This policy contained coverage for, among other things, the dwelling in the amount of $97,000.00 for the insured premises located at 432 Kentucky, West Helena, Arkansas and $9,700.00 for loss of use of the dwelling.

7.      On May 13, 2013, three separate fires occurred, which, combined, totally destroyed the covered dwelling and all of the personal property contained therein.  The dwelling was covered under Exhibit 1, but the personal property located therein belonged to the person who was renting the residence from Plaintiffs and lived there at the time of the fires.

8.      The Smiths timely made a claim for benefits and submitted the proof of loss. Defendant brought a team of investigators to the site to investigate the cause and origin of the fire.

9.      During the claims process, the Smiths provided evidence to the Defendant's investigator that would lead the Defendant to conclude that the tenant in the rental dwelling at the time intentionally set fire to this property.  The motive for such conduct was that the renter intended to move out soon and, upon information and belief, had a policy of renter's insurance which she intended to collect upon by starting the fire and burning her personal contents.  Despite being provided with this information, Travelers refused to follow-up or properly investigate on this lead.

10.     The Defendant was given full authority to review and investigate the fire scene and thereafter cleaned, piled and removed debris from the fire scene.

11.     For reasons still unknown to the insureds, Lakeisha and Scottie Smith, the Defendant has refused to pay for the loss of the dwelling or the personal property.

12.     The Smiths have made repeated demands on the insurance company to pay for the losses under this coverage. The insurance company has refused.

13.     Section 9 of the Arkansas Unfair Claims Settlement Practices Act requires the insurance company, within fifteen working days after receipt by the insurer of properly executed proof of loss, to notify and advise the insured as to the acceptance or denial of the claim. If the claim is denied, the insurer is required by Arkansas law to identify the grounds of the specific policy provision, condition, or exclusion. The denial must be given to the claimant in writing. If the insurer needs more time to determine whether a claim should be accepted or denied, it is required to notify the first party in writing within fifteen working days after receipt of the proof of loss and every forty five days thereafter. All such notices must set forth the reason additional time is needed for investigation.

14.     Despite demand from Plaintiffs to pay, the Defendant has refused payment following the loss without identifying any basis to deny the claim. On January 20, 2014, seven months after the claim was made and the insurer was notified of the loss, Travelers cited certain arson exclusion and fraud exclusion provisions which it maintains constitute the basis for the denial of the claim. However, Travelers has identified no evidence which would support the application of these exclusions to this claim or any other reason that would support the denial of the claim. *See* Exhibit 2.

15.     Pursuant to section 9(b) of the Arkansas Unfair Claim Settlement Practices Act, before asserting a defense that a first party claimant has fraudulently caused or contributed to the loss by arson, the insurer must submit a "reasonable basis supported by specific information available for review by the Arkansas Insurance Department." Otherwise, the time periods set forth in § 9

3

apply.

16.    Despite repeated requests, the insurance company/Defendant has been unable or has refused to submit any specific information that Lakeisha or Scottie Smith fraudulently caused or contributed to the loss by arson or concealed any information in regard to the insured property, the insurance coverage, or the loss. In fact, the insurance company has not even alleged at any time during its correspondence or communication with the Smiths and prior to the final denial that the Smiths have engaged in such activity.

17.    The substantial delay by the Defendant to pay the claim of the Smiths for real property and loss of use of the property for lost rents violates the specific terms of the policy, the Arkansas Unfair Settlement Practices Act, and was both unreasonable and unnecessary. Moreover, the denial of the claim entitles Plaintiffs to recover interest, penalties and fees pursuant to Ark. Code Ann. § 23-79-208.

18.    As more fully set forth below, Plaintiffs are entitled to recover all damages and benefits due arising from the fire of May 13, 2013. Additionally, due to the Defendant's failure to pay Plaintiffs' previous reasonable demand which was within the applicable policy limits, Plaintiffs are entitled to recover an additional 12% penalty, attorneys' fees and costs, and interest pursuant to Ark. Code Ann. § 23-79-208.

## COUNT I
## BREACH OF INSURANCE CONTRACT

19.    Paragraphs 1-18 are incorporated herein by reference as set forth word for word.

20.    Plaintiffs are entitled to recover against the Defendant pursuant to the provisions contained in Policy No. 93854413 663 1, which was in effect at the time of the loss on May 13,

2013.

21.    As a result of the loss sustained in the fire of May 13, 2013, Plaintiffs are entitled to recover $97,000.00.  In addition, Plaintiffs are entitled to recover lost fair rental value as incurred from the date of the loss until the date of judgment.

22.    Plaintiffs have made a demand for payment within policy limits upon this Defendant which has been rejected.

23.    The failure to tender monies to its insured pursuant to the provisions of the insurance contract is a breach of the contract by Travelers and entitles Plaintiffs to the following:

    (a)    Payment for losses in the amount of $97,000.00, plus the lost fair rental value as incurred from the date of the loss until the date of judgment;

    (b)    Twelve percent penalty pursuant to Ark. Code Ann. § 23-79-208;

    (c)    Attorneys' fees pursuant to Ark. Code Ann. § 23-79-208;

    (d)    All other costs incurred to prosecute this action.

24.    Defendant's actions were willful and malicious and connected with its contractual agreement with Plaintiffs.  As such, Defendant's actions support an award of punitive damages in an amount to be determined by the jury.  Accordingly, Plaintiffs are entitled to recover punitive damages in an amount to be determined by the jury.

## COUNT II
## COMMON-LAW BAD FAITH

25.    Paragraphs 1-24 are incorporated herein by reference as set forth word for word.

26.    An insurer's disregarding of the insured's overwhelming likelihood of liability has been held to constitute bad faith under Arkansas law.  In this instance, Travelers has willfully disregarded the insured's overwhelming likelihood of liability.

27.     The Defendant had an obligation to conduct a proper investigation, evaluation, and payment of Plaintiffs' claim.

28.     The Defendant, in this instance, improperly turned a blind eye to clear evidence indicating that the renter in the apartment at the time of the fire intentionally set this fire and did not do so upon the direction or knowledge of the Plaintiffs.

29.     Thus, the Defendant improperly investigated, evaluated, and denied payment of this claim.

30.     In addition, throughout the claims process in this matter, Defendant willfully, unnecessarily, and improperly delayed the investigation of this claim without justification.

31.     The Defendant's failure to properly investigate, evaluate, or pay this claim constitutes bad faith under Arkansas law and entitles the Plaintiffs to recover punitive damages in addition to those compensatory damages specified above.

## COUNT III
## BAD FAITH-FAILURE TO ADHERE TO MINIMUM STANDARDS OF CLAIM SETTLEMENT

32.     Paragraphs 1-31 are incorporated herein by reference as set forth word for word.

33.     The Insurance Commissioner of the State of Arkansas, pursuant to authority vested by Arkansas law, promulgated Rule and Regulation 43, entitled "Unfair Claim Settlement Practices."

34.     Section 1 of Rule and Regulation 43 includes the following provision: "The purpose of this rule is to define certain minimum standards which, if violated with such frequency as to indicate a general business practice, will be deemed to constitute unfair claims settlement practices."

6

35.     Section 7 of Rule and Regulation 43 includes the following provision: "Pursuant to Ark. Code Ann. § 23-79-126, insurers shall furnish forms for proof of loss within twenty (20) calendar days after loss has been reported, or thereafter waive proof of loss requirements."

36.     Section 8 and 9 of Rule and Regulation 43 includes provisions regarding the standards for prompt investigation of claims.

37.     Throughout the claims process in this matter, Defendant violated this regulation by willfully, unnecessarily, and improperly delaying investigation of and denying the claim without justification.

38.     Defendant's failure to adhere to minimum standards of claims settlement as set forth in Rule and Regulation 43 promulgated by the Insurance Commissioner of the State of Arkansas, and the resulting breach of a contract between the Plaintiff and Defendant, constitutes conduct that is dishonest, oppressive, and malicious.  Accordingly, such conduct constitutes bad faith entitling the Plaintiff to punitive damages under Arkansas Law.

39.     Plaintiff demands a trial by jury.

WHEREFORE, Plaintiffs, Lakeisha and Scottie Smith, pray that they have and recover judgment against the Defendant in the following manner:

(a)     Payment for losses in the amount of $97,000, plus the lost fair rental value as incurred from the date of the loss until the date of judgment;

(b)     Twelve percent penalty and interest pursuant to Ark. Code Ann. § 23-79-208;

(c)     Attorneys' fees;

(d)     Interest as it has accrued at the maximum legal rate;

(e)     All other costs incurred to prosecute this action;

(f)     All other just and proper relief.

Respectfully submitted,

Brandon W. Lacy, Bar # 03098
**WILCOX & LACY, PLC**
600 S. Main Street
Jonesboro, Arkansas 72401
(870) 931-3101

Attorneys for Plaintiffs

By: _____
        Brandon W. Lacy #03098

8

Policy Change
Declarations


**TRAVELERS**

## HOMESAVER POLICY

**Named Insured**

LAKEISHA & SCOTTIE SMITH
1349 CLARIANNA
WEST HELENA AR 72390-1701

**Your Agency's Name and Address**

TRAVELERS BUSINESS CENTER
P.O. BOX 59059
KNOXVILLE   TN  37950-9059

Your Policy Number:    933854413 663 1
Your Account Number:   933854413

For Policy Service Call: 1-877-490-4454
For Claim Service Call: 1-800-CLAIM33

**Policy Period**
FROM: 10-27-12 To: 10-27-13  12:01 A.M.
STANDARD TIME AT THE RESIDENCE PREMISES

Change Effective Date: 12-10-12

Reason for Change: Change to Insureds Name

**Location of Residence Premises**
432 KENTUCKY
WEST HELENA, AR 723901929

No Change in Premium

| Section I - Property Coverages | Limits of Liability | Premium |
|---|---|---|
| A - Dwelling | $  97,000 | $   760.00 |
| B - Other Structures | 9,700 | INCL |
| C - Household Furnishings | 2,000 | INCL |
| D - Loss of Use | 9,700 | INCL |

| Section II - Liability Coverages | Limits of Liability | Premium |
|---|---|---|
| E - Premises Liability | $ 100,000 | $    12.00 |
| F - Medical Payments | 1,000 | INCL |

**Policy Forms and Endorsements**

| | | | |
|---|---|---|---|
| HS 663 | 09 99 | Rental Dwelling Form | |
| HS 00 03 | 07 02 | Special Coverage | |
| HS 01 03 | 10 12 | Special Provisions - Arkansas | |
| HS 04 16 | 09 99 | Premises Alarm Or Fire Protection System | |
| HS 80 91 | 12 02 | Limited Fungi, Other Microbes or Rot Remediation | $   5,000 |

**Total Premium**                                                    $   772.00

**Your Premium Reflects the Following Credits or State Surcharges**

Premises Alarm System-Fire                                              5.0%

**EXHIBIT**

Continued on next page              Insured Copy                          Page 1 of 2

PL-8551 1-97   010/0M4238                  000003/00002 F3118A85 7786 12/12/12

Policy-Deductible: $ 1,000.00 All perils insured against

In case of loss under section I, only that part of the loss over the stated
deductible is covered.

Your Insurer:    The Travelers Indemnity Company of America
                 One of The Travelers Property Casualty Companies
                 One Tower Square, Hartford, CT 06183

## For Your Information

Warning:
Any person who knowingly, and with intent to injure, defraud, or deceive any
claim for the proceeds of an insurance policy containing any false, incomplete
or misleading information is guilty of a felony.

Earthquake Coverage is not provided on your policy. If you are interested
in purchasing Earthquake Coverage, please contact your Travelers representative.

### IMPORTANT NOTICE REGARDING FIRE PROTECTION

Did you know that the firefighting ability of your Fire Department helps lower
your insurance rate? It's true! The better your firefighters are equipped and
trained, the better their access to water for fighting fires, the length of
time it takes for them to arrive at a fire, are a few of a many factors that
have an impact on your property insurance rates. Help your firefighters help
you! They need your support, financial, and otherwise. Adequate funding is
important to improving the protection that may translate to lower premiums!

Thank you for insuring with Travelers. We appreciate your business. If you
have any questions about your insurance, please contact your agent or
representative.

For information about how Travelers compensates independent agents and
brokers, please visit www.Travelers.com or call our toll free telephone
number 1-866-904-8348. You may also request a written copy from Marketing
at One Tower Square, 2GSA, Hartford, Connecticut 06183.

These declarations are part of your Homesaver Insurance Policy, Rental
Dwelling Form 663. If a change number and effective date appear at the top
of this page, these Declarations replace any previous Declarations on that date.

PL-8651 1-97   010/0M4238



**TRAVELERS**

This is to certify that this is a reproduction, from the company's records, of the insurance policy between the insured and the insuring company as described on the Declarations Page.   It is a full, true and complete reproduction of the insurance policy.   No insurance is afforded hereunder.

Signature: *Ethel McFadden*

Date:  7.26.2013





# A Homesaver Policy Booklet

# from Travelers

**Especially for:**
**LAKEISHA ROSS**

RENTAL DWELLING FORM 663

# YOUR HOMESAVER POLICY QUICK REFERENCE

DECLARATIONS PAGE

   Your Name
   Location of Residence Premises
   Policy Period
   Coverages
   Limits of Liability
   Deductible Amounts

Beginning
On Page

AGREEMENT ................................................................... 1

DEFINITIONS ................................................................... 1

**SECTION I
PROPERTY
COVERAGES**

COVERAGE A - DWELLING ................................................. 2

COVERAGE B - OTHER STRUCTURES .................................. 2

COVERAGE C - HOUSEHOLD FURNISHINGS ......................... 2

COVERAGE D - LOSS OF USE ........................................... 2

ADDITIONAL COVERAGES ................................................. 2

PERILS INSURED AGAINST ............................................... 4

EXCLUSIONS ................................................................... 5

LOSS DEDUCTIBLE ......................................................... 6

CONDITIONS ................................................................... 6

   Your Duties After Loss ............................................... 6

   Loss Settlement ....................................................... 7

**SECTION II
LIABILITY
COVERAGES**

COVERAGE E - PREMISES LIABILITY ................................... 8

COVERAGE F - MEDICAL PAYMENTS .................................. 8

ADDITIONAL COVERAGES ................................................. 9

EXCLUSIONS ................................................................... 9

CONDITIONS ................................................................... 11

   Limit of Liability ....................................................... 11

   Duties After Occurrence ............................................ 11

**SECTIONS I AND II
CONDITIONS**

CONDITIONS ................................................................... 12

   Policy Period ........................................................... 12

   Cancellation ............................................................ 12

   Nonrenewal ............................................................. 13

HS 663 09 99

HS 663 09 99

# Homesaver Insurance Policy

## Rental Dwelling Form 663

### AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

### DEFINITIONS

In this policy, "you" and "your" refer to the named "insured" shown in the Declarations. "We", "us" and "our" refer to the company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability" means liability for "bodily injury" or "property damage" arising out of the:

   a. Ownership of such vehicle or craft by an "insured";

   b. Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

   c. Entrustment of such vehicle or craft by an "insured" to any person;

   d. Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; and

   e. Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

   For the purpose of this definition:

   a. Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

   b. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles; and

   c. Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor.

   d. Motor vehicle means a "motor vehicle" as defined in 7. Below.

2. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

3. "Business" means:

   a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

   b. Any other activity engaged in for money or other compensation.

4. "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, if the employee's duties are other than those performed by a "residence employee".

5. "Insured" means:

   a. The person or organization shown as the named "insured" on the Declarations; and

   b. Any person or organization while acting as real estate manager for you;

   Under both Section I and II, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

6. "Insured location" means the "residence premises" shown in the Declarations.

7. "Motor vehicle" means:

   a. A self-propelled land or amphibious vehicle; or

   b. Any trailer or semi-trailer which is being carried on, towed by or hitched for towing by a vehicle described in a. above.

8. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results during the policy period in:

a. "Bodily injury"; or

b. "Property damage".

9. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

10. "Residence employee" means:

a. An employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, if the employee's duties are related to the maintenance or use of the "residence premises".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

11. "Residence premises" means the one, two, three or four family dwelling shown as the "residence premises" in the Declarations.

"Residence premises" also means other structures and grounds at that location.

---

## SECTION I - PROPERTY COVERAGES

### COVERAGE A - DWELLING

We cover:

1. The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

2. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

This coverage does not apply to land, including land on which the dwelling is located.

### COVERAGE B - OTHER STRUCTURES

We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located.

We do not cover other structures:

1. Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage; or

2. From which any "business" is conducted.

The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage A. Use of this coverage does not reduce the Coverage A limit of liability.

### COVERAGE C - HOUSEHOLD FURNISHINGS

We cover your appliances, carpeting and other household furnishings in that part of the "residence premises" regularly rented or held for rental to any person other than an "insured".

### COVERAGE D - LOSS OF USE

The limit of liability for Coverage D is the total limit for the two coverages that follow.

1. **Fair Rental Value.** If a loss covered under Section I makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover its fair rental value. Fair rental value does not include any expenses that do not continue while that part of the "residence premises" rented to others or held for rental is not fit to live in.

Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

2. **Civil Authority.** If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Fair Rental Value loss as provided under 1. above for no more than two weeks.

The periods of time under 1. and 2. above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

### ADDITIONAL COVERAGES

1. **Debris Removal.** We will pay your reasonable expense for the removal of:

a. Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

This expense is included in the limit of liability that applies to the damaged property. If the

HS 663 09 99

amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

2. **Reasonable Repairs.** In the event that covered property is damaged by a Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by a Peril Insured Against.

This coverage does not:

a. Increase the limit of liability that applies to the covered property; or

b. Relieve you of your duties, in case of a loss to covered property, as set forth in SECTION I - CONDITION 2.c.

3. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the "residence premises", or Vandalism or malicious mischief.

We will pay up to 5% of the limit of liability that applies to the dwelling, for all trees, shrubs, plants or lawns. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

5. **Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 90 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

6. **Loss Assessment.** We will pay up to $1,000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners. The assessment must be made as a result of direct loss to property, of the type covered under this policy that is owned by all members collectively, caused by a Peril Insured Against under COVERAGE A - DWELLING, other than:

a. Earthquake; or

b. Land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises".

We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

The limit of $1,000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will apply only one deductible per unit to the total amount of any one loss to the property described above, regardless of the number of assessments.

Condition 1. Policy Period, under SECTIONS I AND II CONDITIONS, does not apply to this coverage.

This coverage is additional insurance.

7. **Glass or Safety Glazing Material.**

a. We cover:

(1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window;

(2) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

b. This coverage does not include loss:

(1) To covered property which results because glass or safety glazing material has been broken, except as provided in a.(2) above; or

(2) On the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.



The most we will pay is $100 for any one loss regardless of the number of windows or other covered property involved in the loss.

This coverage does not increase the limit of liability that applies to the damaged property.

8. **Ordinance or Law.**

   a. You may use up to 10% of the limit of liability that applies to Coverage A for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

      (1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

      (2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

      (3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

   b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

c. We do not cover:

   (1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

   (2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

      Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

   This coverage is additional insurance.

9. **Inflation Coverage.** We may adjust the limits of liability for Coverages A, B, C and D at the beginning of each successive policy term to reflect increases in the cost of insured property. The amount of such increase will be based on the data provided by the appraisal company shown in the Declarations. Payment of the required premium when due for the successive policy term will be sufficient to indicate your acceptance of the adjusted limits.

   We will also adjust the limits of liability at the time of a loss by the same percentage pro rated from the effective date of the policy period or the effective date of change if you have requested a change to the limit of liability for Coverage A during the policy period.

---

## SECTION I - PERILS INSURED AGAINST

We insure for direct physical loss to the property described in Coverages A, B and C caused by a peril listed below unless the loss is excluded in SECTION I - EXCLUSIONS.

1. Fire or lightning.

2. Windstorm or hail.

   This peril does not include loss to the inside of a building or the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building, causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

3. Explosion.

4. Riot or civil commotion.

5. Aircraft, including self-propelled missiles and spacecraft.

6. Vehicles.

   This peril does not include loss to a fence, driveway or walk caused by a vehicle owned or operated by a resident of the "residence premises".

7. Smoke, meaning sudden and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. Volcanic eruption other than loss caused by earthquake, land shock waves or tremors.

9. Vandalism or malicious mischief.

This peril does not include loss:

a. By pilferage, theft, burglary or larceny, but we do cover damage to covered property caused by burglars; or

b. To property on the "residence premises", and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

---

## SECTION I - EXCLUSIONS

We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

1. Ordinance or Law, meaning any ordinance or law:

   a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This exclusion, 1.a., does not apply to the amount of coverage that may be provided for under Additional Coverage 8. Ordinance or Law;

   b. The requirements of which result in a loss in value to property.

   c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

   Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

   This exclusion applies whether or not the property has been physically damaged.

2. Earth Movement, meaning:

   a. Earthquake including land shock waves or tremors before, during or after a volcanic eruption;

   b. Landslide, mudslide, or mudflow;

   c. Subsidence or sinkhole; or

   d. Any other earth movement including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature, unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

3. Water Damage, meaning:

   a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

   b. Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

   c. Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire or explosion resulting from water damage is covered.

4. Power Failure, meaning the failure of power or other utility service if the failure takes place off the "residence premises". But, if the failure results in a loss from a Peril Insured Against, on the "residence premises", we will pay for the loss caused by that Peril Insured Against.

5. Neglect, meaning neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

6. War, including the following and any consequence of any of the following:

   a. Undeclared war, civil war, insurrection, rebellion or revolution;

   b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

7. **Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of SECTION I - CONDITIONS.

8. **Intentional Loss,** meaning any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, regardless of whether that "insured"

committed or conspired to commit the act causing the loss.

9. **Governmental Action,** meaning the destruction, confiscation or seizure of property described in Coverage A, B or C by order of any governmental or public authority.

This exclusion does not apply to such acts ordered by any governmental or public authority that are taken at the time of a fire to prevent its spread, if the loss caused by fire would be covered under this policy.

---

## LOSS DEDUCTIBLE

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under Section I

- Property Coverages that exceeds the deductible amount shown in the Declarations.

---

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

   a. To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

   b. For more than the applicable limit of liability.

2. **Duties After Loss.** In case of a loss to covered property, we have no duty to provide coverage under this policy unless there has been full compliance with the duties noted below. These duties must be performed either by you or by an "insured" seeking coverage, if not you:

   a. Give prompt notice to us or our agent;

   b. Notify the police in case of loss by theft;

   c. Protect the property from further damage. If repairs to the property are required, you must:

      (1) Make reasonable and necessary repairs to protect the property; and

      (2) Keep an accurate record of repair expenses;

   d. Cooperate with us in the investigation of a claim;

   e. Prepare an inventory of damaged household furnishings showing the quantity, description,

   actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

   f. As often as we reasonably require:

      (1) Show the damaged property;

      (2) Provide us with records and documents we request and permit us to make copies; and

      (3) Submit to examination under oath, while not in the presence of another "insured", and sign the same;

   g. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

      (1) The time and cause of loss;

      (2) The interest of all "insureds" and all others in the property involved and all liens on the property;

      (3) Other insurance which may cover the loss;

      (4) Changes in title or occupancy of the property during the term of the policy;

      (5) Specifications of damaged buildings and detailed repair estimates;

(6) The inventory of damaged household furnishings described in 2.e. above; and

(7) Receipts for additional living expenses incurred and records that support the fair rental value loss.

3. **Loss Settlement.** Covered property losses are settled at actual cash value at the time of loss but not more than the amount required to repair or replace the damaged property.

4. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

   a. Repair or replace any part to restore the pair or set to its value before the loss; or

   b. Pay the difference between actual cash value of the property before and after the loss.

5. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

   Each party will:

   a. Pay its own appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

6. **Other Insurance and Service Agreement.** If a loss covered by this policy is also covered by:

   a. Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

   b. A service agreement, the coverage provided under this policy is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is said to be insurance.

7. **Suit Against Us.** No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy

and the action is started within two years after the date of loss.

8. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

9. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

   a. Reach an agreement with you;

   b. There is an entry of a final judgment; or

   c. There is a filing of an appraisal award with us.

10. **Abandonment of Property.** We need not accept any property abandoned by an "insured".

11. **Mortgage Clause.**

    The word "mortgagee" includes trustee.

    If a mortgagee is named in this policy, any loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

    a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

    b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

    c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

    If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

    If we pay the mortgagee for any loss and deny payment to you:

    a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

    b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive



a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

12. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

13. **Nuclear Hazard Clause.**

   a. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

   b. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in Section I.

   c. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

14. **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

15. **Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

16. **Concealment or Fraud.** With respect to all "insureds" covered under this policy, we provide no coverage for loss if, whether before or after a loss, one or more "insureds" have:

   a. Intentionally concealed or misrepresented any material fact or circumstance;

   b. Engaged in fraudulent conduct; or

   c. Made false statements;

   relating to this insurance.

---

## SECTION II - LIABILITY COVERAGES

Section II of the policy is optional. It applies only if a premium for Coverage E is shown in the Declarations:

### COVERAGE E - PREMISES LIABILITY

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" arising out of the ownership, maintenance, or use of the "insured location" and caused by an "occurrence", we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when our limit of liability is exhausted by the payment of settlements or judgments.

### COVERAGE F - MEDICAL PAYMENTS

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury";

   a. Arises out of a condition on the "insured location" or the ways immediately adjoining; or

   b. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured.

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses**. We pay:

    a. Expenses we incur and costs taxed against an "insured" in any suit we defend;

    b. Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;

    c. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

    d. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses**. We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

3. **Loss Assessment**. We will pay up to $1,000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

    a. "Bodily injury" or "property damage" not excluded under Section II of this policy; or

    b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

        (1) The director, officer or trustee is elected by the members of a corporation or association of property owners; and

        (2) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises".

We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1,000 is the most we will pay for loss arising out of:

a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

Condition 1. Policy Period, under SECTIONS I AND II CONDITIONS does not apply to this coverage.

## SECTION II - LIABILITY EXCLUSIONS



1. **Coverage E - Premises Liability and Coverage F - Medical Payments** do not apply to "bodily injury" or "property damage":

    a. Which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":

        (1) Is of a different kind, quality or degree than initially expected or intended; or

        (2) Is sustained by a different person, entity, real or personal property, than initially expected or intended.

    However, this exclusion 1.a. does not apply to "bodily injury" resulting from the use of rea-

    sonable force by an "insured" to protect persons or property.

    b. Arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured". This exclusion 1.b. applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be provided because of the nature of the "business".

This exclusion 1.b. does not apply to the rental or holding for rental of any part of an "insured location";

c. Arising out of a premises:

(1) Owned by an "insured";

(2) Rented to an "insured"; or

(3) Rented to others by an "insured";

that is not an "insured location";

d. Caused directly or indirectly by war, including the following and any consequence of any of the following:

(1) Undeclared war, civil war, insurrection, rebellion or revolution;

(2) Warlike act by a military force or military personnel; or

(3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

e. Which arises out of the transmission of a communicable disease by an "insured";

f. Arising out of any written or oral statement made by you or others on your behalf which is material to any financial transaction.

2. **Coverage E - Premises Liability and Coverage F - Medical Payments** also do not apply to "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability".

Exclusions 1.c. and 2. do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

3. **Coverage E - Premises Liability**, does not apply to:

a. Liability:

(1) For any loss assessment charged against you as a member of an association, corporation or community of property owners, except as provided in Additional Coverage 3. Loss Assessment;

(2) Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

(a) That directly relate to the ownership, maintenance or use of an "insured location"; or

(b) Where the liability of others is assumed by you prior to an "occurrence";

unless excluded in (1) above or elsewhere in this policy;

b. "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location".

c. "Property damage" to property rented to, occupied or used by or in the care of an "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

d. "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

(1) Workers' compensation law;

(2) Non-occupational disability law; or

(3) Occupational disease law;

e. "Bodily injury" or "property damage" for which an "insured" under this policy:

(1) Is also an insured under a nuclear energy liability policy issued by the:

(a) Nuclear Energy Liability Insurance Association;

(b) Mutual Atomic Energy Liability Underwriters;

(c) Nuclear Insurance Association of Canada;

or any of their successors; or

(2) Would be an insured under that policy but for the exhaustion of its limit of liability; or

f. "Bodily injury" to you or a regular resident of your household, other than a "residence employee".

4. **Coverage F - Medical Payments**, does not apply to "bodily injury":

a. To a "residence employee" if the "bodily injury":

(1) Occurs off the "insured location"; and

(2) Does not arise out of or in the course of the "residence employee's" employment by an "insured";

b. To any person eligible to receive benefits voluntarily provided or required to be provided under any:

   (1) Workers' compensation law;

   (2) Non-occupational disability law; or

   (3) Occupational disease law;

c. From any:

   (1) Nuclear reaction;

   (2) Nuclear radiation; or

   (3) Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

   (4) Any consequence of any of these; or

d. To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

---

## SECTION II - CONDITIONS

1. **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

   Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

3. **Duties After "Occurrence".** In case of an "occurrence", we have no duty to provide coverage under this policy unless you or another "insured" performs the duties noted below. You will help us by seeing that these duties are performed.

   a. Give written notice to us or our agent as soon as is practical, which sets forth:

      (1) The identity of the policy and the named "insured" shown in the Declarations;

      (2) Reasonably available information on the time, place and circumstances of the accident or "occurrence"; and

      (3) Names and addresses of any claimants and witnesses;

   b. Cooperate with us in the investigation, settlement or defense of any claim or suit;

   c. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

   d. At our request, help us:

      (1) To make settlement;

      (2) To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

      (3) With the conduct of suits and attend hearings and trials; and

      (4) To secure and give evidence and obtain the attendance of witnesses;

   e. Under the coverage - Damage to Property of Others - submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in an "insured's" control;

   f. No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

4. **Duties of an Injured Person - Coverage F - Medical Payments.**

   The injured person or someone acting for the injured person will:

   a. Give us written proof of claim, under oath if required, as soon as is practical; and

   b. Authorize us to obtain copies of medical reports and records.

   The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

5. **Payment of Claim - Coverage F - Medical Payments.** Payment under this coverage is not an admission of liability by an "insured" or us.

HS 663 09 99

6. **Suit Against Us.** No action can be brought against us unless there has been full compliance with all of the terms under this Section.

No one will have the right to join us as a party to any action against an "insured". Also, no action with respect to Coverage E can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

8. **Other Insurance - Coverage E - Premises Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

9. **Concealment or Fraud.** We do not provide coverage to an "insured" who, whether before or after a loss, has:

a. Intentionally concealed or misrepresented any material fact or circumstance;

b. Engaged in fraudulent conduct; or

c. Made false statements;

relating to this insurance.

---

## SECTIONS I AND II - CONDITIONS

1. **Policy Period.** This policy applies only to loss in Section I or "bodily injury" or "property damage" in Section II, which occurs during the policy period.

2. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions of coverage, whether that general program revision is implemented through introduction of:

a. A subsequent edition of this policy form; or

b. An amendatory endorsement

3. **Waiver or Change of Policy Provisions.**

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

4. **Cancellation.**

a. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

(1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

(2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

(a) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

(b) If the risk has changed substantially since the policy was issued.

This can be done by letting you know at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

d. If the return premium is not refunded with the notice of cancellation or when this policy is

HS 663 09 99

returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

5.  **Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

6.  **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

7.  **Subrogation.** An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

    If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us. Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

8.  **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

    a.  We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

    b.  "Insured" includes:

        (1) An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

        (2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.



HS 663 09 99

HS 01 03 10 12

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SPECIAL PROVISIONS – ARKANSAS

**DEFINITIONS**

The following definition is added:

12. "Fuel system" means:

   a. One or more containers, tanks or vessels which have a total combined fuel storage capacity of 100 or more U.S. gallons; and:

   (1) Are, or were, used to hold fuel; and

   (2) Are, or were, located on any one location;

   b. Any pumping apparatus, which includes the motor, gauge, nozzle, hose or pipes that are, or were, connected to one or more containers, tanks or vessels described in Paragraph a.;

   c. Filler pipes and flues connected to one or more containers, tanks or vessels described in Paragraph a.;

   d. A boiler, furnace or a water heater, the fuel for which is stored in a container, tank or vessel described in Paragraph a.;

   e. Fittings and pipes connecting the boiler, furnace or water heater to one or more containers, tanks or vessels described in Paragraph a.; or

   f. A structure that is specifically designed and built to hold escaped or released fuel from one or more containers, tanks or vessels described in Paragraph a.

   A "fuel system" does not include any fuel tanks that are permanently affixed to a motor vehicle or watercraft owned by an "insured", used for powering the motor vehicle or watercraft and not used at any time or in any manner for "business".

**SECTION I – EXCLUSIONS**

The first paragraph of this section is deleted and replaced by the following:

We do not cover any direct or indirect loss or damage caused by, resulting from, contributing to or aggravated by any of these excluded perils. Loss from any of these perils is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

These exclusions apply whether or not the loss event:

   (1) Results in widespread damage;

   (2) Affects a substantial area; or

   (3) Occurs gradually or suddenly.

These exclusions also apply whether or not the loss event arises from:

   (1) Any acts of nature;

   (2) Any human action or inaction;

   (3) The forces of animals, plants or other living or dead organisms; or

   (4) Any other natural or artificial process.

2. Earth Movement is deleted and replaced by the following:

2. Earth Movement, meaning events that include but are not limited to the following:

   a. Earthquake and earthquake aftershocks;

   b. Volcano activity including but not limited to:

      (1) Volcanic eruption;

      (2) Volcanic explosion;

      (3) Effusion of volcanic material; or

      (4) Lava flow;

   c. Mudslide, including mudflow, debris flow, land-slide, avalanche, or sediment;

   d. Sinkhole;

   e. Subsidence;

   f. Excavation collapse;

   g. Erosion; or

   h. Any expansion, shifting, rising, sinking, contracting, or settling of the earth, soil or land.

This exclusion applies whether or not the earth, soil or land is combined or mixed with water or any other liquid or natural or man made material.

However, loss caused directly by the specific perils:

   a. Fire;

   b. Explosion; or

   c. Breakage of building or dwelling glass or safety glazing material, including storm doors or windows;

following any earth movement is covered.

3. Water Damage is deleted and replaced by the following:

3. Water Damage, meaning;

   a. Flood, surface water, ground water, storm surge, waves, wave wash, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, whether or not a result of precipitation or driven by wind;

   b. Any water or water borne material that enters through or backs up from a sewer or drain; or



which overflows from a sump; sump pump or related equipment;

c. Any water or water borne material located below the surface of the ground including water or water borne material:

(1) Which exerts pressure on, seeps, leaks or flows into:

(a) Any part of the dwelling or other structures;

(b) The foundation of the dwelling or other structures;

(c) Any paved surface located on the "residence premises"; or

(d) Any spa, hot tub, or swimming pool.

(2) Which causes "earth movement"; or

d. Any overflow, release, migration or discharge of water in any manner from a dam, levee, dike, hurricane barrier or any water or flood control device.

Direct loss by fire or explosion resulting from water damage will be covered.

## SECTION I – CONDITIONS

2. **Duties After Loss.** Paragraph a. is deleted and replaced by the following:

a. Give us prompt notice. With respect to a loss caused by the peril of windstorm or hail, that notice must occur no later than one year after the date of loss;

5. Appraisal is deleted and replaced by the following:

5. **Appraisal.** If you and we fail to agree on the amount of loss, an appraisal of the loss may take place. However, an appraisal will take place only if both you and we agree, voluntarily, to have the loss appraised. If so agreed, each party will choose a competent appraiser within 20 days after both parties agree. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the residence premises is located. The appraisers will separately state the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. An appraisal decision will not be binding on either party.

Each party will:

a. Pay its own appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

7. **Suit Against Us** is deleted and replaced by the following:

7. **Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within five years after the date of loss.

11. **Mortgage Clause** is amended as follows:

The sentence "If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect", is deleted and replaced by the following:

If we decide to cancel this policy, the mortgagee will be notified:

a. At least 10 days before the date cancellation takes effect if:

(1) We cancel for nonpayment of premium; or

(2) The policy has been in effect less than 60 days and is not a renewal with us.

b. At least 20 days before the date cancellation takes effect in all other cases.

If we decide not to renew this policy, the mortgagee will be notified at least 30 days before the date nonrenewal takes effect.

(This condition does not apply to form HS 665.)

## SECTION II – EXCLUSIONS

Under **1. Coverage E – Personal Liability** and **Coverage F – Medical Payments to Others:** The following items are added:

• Or any loss, cost, payment or expense, including, but not limited to, defense and investigation, of any kind arising out of, resulting from, caused by or contributed to by the actual or alleged presence or actual, alleged or threatened dispersal, release, ingestion, inhalation or absorption of lead, lead pigment, lead compounds or lead in any form which is or was contained or incorporated into any material or substance. This exclusion applies, but is not limited to:

(1) Any supervision, instructions, recommendations, warnings or advice given in connection with the above;

(2) Any obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such "bodily injury" or

HS 01 03 10 12

"property damage", damages, loss, cost, payment or expense; or

(3) Any request, order or requirement to test for, monitor, abate, mitigate, remediate, contain, remove, dispose of, or in any way respond to or assess the effects of lead, lead pigment, lead compounds or materials or substances containing lead in any form.

• Arising out of, resulting from, caused by or contributed to by the escape or release of fuel from a "fuel system". This exclusion applies, but is not limited to:

(1) Any supervision, instructions, recommendations, warnings or advice given in connection with the above;

(2) Any obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such "bodily injury" or "property damage", damages, loss, cost, payment or expense; or

(3) Any request, order or requirement to test for, monitor, abate, mitigate, remediate, contain, remove, dispose of, or in any way respond to or assess the effects of fuel in any form.

However, this exclusion does not apply to "bodily injury" or "property damage" arising out of fire or explosion that results from such escaped or released fuel.

(In forms HS 663 and HS 664, the above exclusions are added under 1. Coverage E – Premises Liability and Coverage F – Medical Payments.)

**SECTIONS I AND II – CONDITIONS**

4. **Cancellation.** Paragraphs b.(3) and b.(4) are deleted and replaced by the following:

(3) When this policy has been in effect for more than 60 days, or at any time if it is a renewal with us, we may cancel:

(a) Upon discovery of fraud, or material misrepresentation made by or with the knowledge of the named insured in obtaining or continuing this policy, or presenting a claim under this policy;

(b) Upon the occurrence of a material change in the risk which substantially increases any hazard insured against after insurance coverage has been issued;

(c) If there is a violation of any local fire, health, safety, building or construction regulation or ordinance with respect to any insured property or the occupancy of such property which substantially increases any hazard insured against;

(d) For nonpayment of membership dues required by us as a condition of the issuance and maintenance of the policy; or

(e) In the event of a material violation of a material provision of this policy.

This can be done by letting you know at least 20 days before the date cancellation takes effect.

(4) When this policy is written for a period of more than one year, we may cancel for any reason(s) noted in b.(3) at anniversary by letting you know at least 20 days before the date cancellation takes effect.

7. **Subrogation.** The first paragraph is deleted and replaced by the following:

7. **Subrogation.** You may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us. However, we will be entitled to a recovery only after the insured person has been fully compensated for the loss sustained.

All other provisions of this policy apply.



HS 80 91 12 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## LIMITED FUNGI, OTHER MICROBES OR ROT REMEDIATION
For use with Forms HS 663 and HS 664

## ARKANSAS

**DEFINITIONS**

The following definition is added:

- "Fungi"

    a. "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by "fungi".

    b. Under Section II, this does not include any "fungi" that are, are on, or are contained in, a product or goods intended for consumption.

**SECTION I – PROPERTY COVERAGES**
**COVERAGE D - LOSS OF USE**

Paragraph 1. is deleted and replaced by the following:

1. **Fair Rental Value**

    If a loss covered under Section I makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in. However, fair rental value due to "fungi", other microbes or rot remediation will not be paid in addition to any amounts paid or payable under the Additional Coverage Limited "Fungi", Other Microbes Or Rot Remediation.

    Payment will be for the shortest time required to repair or replace such premises. This period of time is not limited by expiration of this policy.

**ADDITIONAL COVERAGES**

The following additional coverage is added:

- **Limited "Fungi", Other Microbes Or Rot Remediation.**

    a. If a loss caused by a Peril Insured Against under Section I results in "fungi", other microbes or rot, we will pay for:

        (1) Remediation of the "fungi", other microbes or rot. This includes payment for the reasonable and necessary cost to tear out and replace any part of the building as needed to gain access to the "fungi", other microbes or rot;

        (2) Any reasonable and necessary increase in living expense you incur so that your household can maintain its normal standard of living or loss of fair rental value if the "fungi", other microbes or rot makes the "residence premises" not fit to live in; and

        (3) Any reasonable and necessary testing or monitoring of air or property to confirm the absence, presence or level of the "fungi", other microbes or rot, whether performed prior to, during or after removal, repair, restoration or replacement.

    b. We will pay under this additional coverage only if:

        (1) The covered loss occurs during the policy period;

        (2) All reasonable means were used to save and preserve the property at the time of and after the covered loss; and

        (3) We receive prompt notice of the covered cause of loss that is alleged to have resulted in "fungi", other microbes or rot.

    c. The most we will pay under this additional coverage is $ _5,000_ . This is the most we will pay for the total of all loss or costs regardless of the:

        (1) Number of locations or items of property insured under this policy; or

        (2) Number of losses or claims made.

    d. This is not additional insurance and does not increase the limit of liability that applies to the damaged property.

**SECTION I – EXCLUSIONS**

The following exclusion is added:

10. **"Fungi", Other Microbes or Rot,** meaning any loss or cost resulting from, arising out of, caused by, consisting of, or related to, "fungi", other microbes or rot. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. This exclusion does not apply to "fungi", other microbes or rot remediation coverage that may be afforded under the Additional Coverage Limited "Fungi", Other Microbes Or Rot Remediation.

## SECTION II – EXCLUSIONS

The following exclusion is added under item 1. Coverage E - Premises Liability and Coverage F - Medical Payments:

g. "Bodily injury" or "property damage" consisting of, arising out of, caused by, contributed to, aggravated by or resulting from, whether directly or indirectly, by "fungi", other microbes or rot. This includes:

(1) The cost of testing, monitoring, abating, mitigating, removing, remediating or disposing of "fungi", other microbes or rot;

(2) Any supervision, instruction, disclosures, or failures to disclose, recommendations, warnings, or advice given, or that allegedly should have been given, in connection with "bodily injury" or "property damage" consisting of, arising out of, caused by, contributed to, aggravated by or resulting from, whether directly or indirectly, by "fungi", other microbes or rot, or the activities described in g.(1) above;

(3) Any obligation to share with or repay another who must pay damages because of "bodily injury" or "property damage" damage of the type described in this exclusion. This applies regardless of any other cause that contributed directly or indirectly, concurrently or in any sequence to the "bodily injury" or "property damage"; and

(4) Liability imposed upon any "insured" by any governmental authority for "bodily injury" or "property damage" consisting of, arising out of, caused by, contributed to, aggravated by or resulting from, whether directly or indirectly, by "fungi", other microbes or rot.

All other provisions of this policy apply.

HS 00 03 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SPECIAL COVERAGE

For an additional premium, the policy is amended as follows:

## SECTION I - ADDITIONAL COVERAGES

Under **7. Glass or Safety Glazing Material**, the next to the last paragraph regarding the $100 limit is deleted.

The following coverage is added:

**Collapse.**

a. With respect to this additional coverage:

(1) **Collapse** means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

(2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

(3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

(4) A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused only by one or more of the following:

(1) Perils Insured Against that apply to COVERAGE C. These perils apply to covered buildings and property covered under Coverage C for loss insured by this additional coverage;

(2) Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

(3) Insect or vermin damage that is hidden from view, unless the presence of such insect or vermin damage is known to an "insured" prior to collapse;

(4) Weight of contents, equipment, animals or people;

(5) Weight of rain which collects on a roof; or

(6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under b. (2) through (6) above unless the loss is a direct result of the collapse of a building or any part of a building.

This coverage does not increase the limit of liability applying to the damaged covered property.

## SECTION I - PERILS INSURED AGAINST

The **PERILS INSURED AGAINST** section is deleted in its entirety and replaced by the following:

(For Forms HS 662 and HS 664, the word "dwelling" as used in this section means "unit".)

**COVERAGE A – DWELLING and COVERAGE B – OTHER STRUCTURES**

We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not insure, however, for loss:

1. Excluded under SECTION I - EXCLUSIONS;

2. Involving collapse, other than as provided in the Additional Coverage **Collapse.**; or

3. Caused by:

a. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

(1) Maintain heat in the building; or

(2) Shut off the water supply and drain the system and appliances of water;

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equip-

ment, or a roof drain, gutter, downspout or similar fixtures or equipment.

b. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

(1) Fence, pavement, patio, deck or swimming pool;

(2) Footing, foundation, bulkhead, wall or any other structure or device that supports all or part of a building or other structure;

(3) Retaining wall or bulkhead that does not support all or part of a building or other structure; or

(4) Pier, wharf or dock;

c. Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

d. Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling .has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

e. Caused by constant or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

f. Any of the following:

(1) Wear and tear, marring, deterioration;

(2) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

(3) Smog, rust or other corrosion;

(4) Smoke from agricultural smudging or industrial operations;

(5) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

(6) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

(7) Birds, vermin, rodents, or insects; or

(8) Animals owned or kept by an "insured".

Exception to 3.f.

Unless the loss is otherwise excluded, we cover loss to property covered under Coverages A or B resulting from an accidental discharge or overflow of water or steam from within a:

(a) Storm drain or water, steam or sewer pipe off the "residence premises"; or

(b) Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building or other structure on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For the purposes of this exception to 3.f., a plumbing system or household appliance does not include a sump, sump pump or related equipment, or a roof drain, gutter, downspout or similar fixtures or equipment.

Section I exclusion 3. Water Damage, paragraphs a. and c. do not apply to loss by water covered under 3.e. and f. above.

Under paragraphs 2. and 3., any ensuing loss to property described in Coverages A and B not excluded or excepted by any other provision in this policy is covered.

## COVERAGE C - PERSONAL PROPERTY (HOUSEHOLD FURNISHINGS in Forms HS 663 and HS 664)

We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in SECTION I - EXCLUSIONS.

1. Fire or lightning.

2. Windstorm or hail.

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

This peril includes loss to rowboats, canoes and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles.**

7. **Smoke,** meaning sudden and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief.**

9. **Falling objects.**

This peril does not include loss to property contained in a building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

10. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

11. **Sudden and accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

Under Forms HS 661 and HS 663, we also pay to tear out and replace any part of the building on the "residence premises", but only when necessary to repair the system or appliance from which the water or steam escaped.

Under Forms HS 662 and HS 664, we also pay to tear out and replace any part of a building owned solely by you which is covered under Coverage A and at the location of the "residence premises", but only when necessary to repair the system or appliance from which the water or steam escaped.

This peril does not include loss:

a. To the system or appliance from which the water or steam escaped;

b. Caused by or resulting from freezing except as provided in the peril of freezing below;

c. On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

d. Caused by constant or repeated seepage or leakage of water or steam, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment, or a roof drain, gutter, downspout or similar fixtures or equipment.

12. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

13. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, but only if you have used reasonable care to:

a. Maintain heat in the building; or

b. Shut off the water supply and drain the system and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment, or a roof drain, gutter, downspout or similar fixtures or equipment.

14. **Sudden and accidental damage from artificially generated electrical current.**

This peril does not include loss to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

15. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

SECTION I - EXCLUSIONS

The following exclusions are added:

We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in

Coverages A and B not excluded or excepted in this policy is covered.

a. **Weather conditions.** However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in SECTION I - Exclusions 1. Through 9. above to produce the loss;

b. **Acts or decisions,** including the failure to act or decide, of any person, group, organization or governmental body; or

c. **Faulty, inadequate or defective:**

(1) Planning, zoning, development, surveying, siting;

(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

(3) Materials used in repair, construction, renovation or remodeling; or

(4) Maintenance;

of part or all of any property whether on or off the "residence premises".

## SECTION I - CONDITIONS

For Forms HS 661 and HS 663 only, Condition **3. Loss Settlement** is deleted and replaced by the following:

3. **Loss Settlement.** In this condition 3., the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in Additional Coverage **8. Ordinance or Law.** Covered property losses are settled as follows:

a. Property of the following types:

(1) Personal property or household furnishings;

(2) Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;

(3) Structures that are not buildings;

(and under Form HS 661 only -

(4) Grave markers, including mausoleums);

at actual cash value at the time of loss but not more than the amount required to repair or replace.

b. Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

(1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

(a) The limit of liability under this policy that applies to the building;

(b) The replacement cost of that part of the building damaged with material of like kind and quality and for like use; or

(c) The necessary amount actually spent to repair or replace the damaged building.

If the building is rebuilt at a new premises, the cost described in **3.b.(1)(b)** is limited to the cost which would have been incurred if the building had been built at the original premises.

(2) If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

(a) The actual cash value of that part of the building damaged; or

(b) That proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

(3) To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

(a) Excavations, footings, foundations, piers or any other structures or devices that support all or part of the



building which are below the under-surface of the lowest basement floor;

(b) Those supports in (a) above which are below the surface of the ground inside the foundation walls, if there is no basement; and

(c) Underground flues, pipes, wiring and drains.

(4) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss according to the provisions of b.(1) and b.(2) above.

However, if the cost to repair or replace the damage is both:

(a) Less than 5% of the amount of insurance in this policy on the building; and

(b) Less than $2500;

we will settle the loss according to the provisions of b.(1) and b.(2) above whether or not actual repair or replacement is complete.

(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this

Condition 3. Loss Settlement, provided you notify us of your intent to do so within 180 days after the date of loss.

For Forms HS 662 and HS 664 only, Condition 3. Loss Settlement is deleted and replaced by the following:

3. Loss Settlement.

a. Personal property or household furnishings (and under Form 662 only - grave markers, including mausoleums), at actual cash value at the time of loss but not more than the amount required to repair or replace.

b. Buildings under Coverage A or B:

(1) If the damage is repaired or replaced within a reasonable time, at the actual cost to repair or replace;

(2) If the damage is not repaired or replaced within a reasonable time, at the actual cash value, but not more than the amount required to repair or replace.

In this provision, the terms "repaired" and "replaced" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in Additional Coverage 8. Ordinance or Law.

All other provisions of this policy apply.

HS 04 16 09 99

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PREMISES ALARM OR FIRE PROTECTION SYSTEM

We acknowledge the installation of an alarm system and/or automatic sprinkler system approved by us on the "residence premises". You agree to maintain this system or systems, for which we have granted a credit, in working order and to let us know promptly of any change, including removal, made to the system(s).

HS 04 16 09 99

Page 1 of 1

This policy is signed for the company which is the insurer under this policy.

*Wendy C. Skjerven*

Wendy C. Skjerven
Senior Vice President and
Corporate Secretary

*Gregory C. Toczydlowski*

Gregory C. Toczydlowski
President
Personal Insurance

**IN WITNESS WHEREOF, the Company has executed and attested these presents.**

PL-9107 8-97

## WATTS, DONOVAN & TILLEY, P.A.

ATTORNEYS AT LAW
200 RIVER MARKET AVENUE, SUITE 200
LITTLE ROCK, ARKANSAS 72201-1769

Michael McCarty Harrison

TELEPHONE: (501) 372-1406
FACSIMILE: (501) 372-1209
DIRECT DIAL: (501) 850-7098

E-mail: michael.harrison@wdt-law.com

January 20, 2014

**Via Regular Mail &**
**Certified Mail**
**Return Receipt**
**Tracking No. 7013 1090 0001 5653 6906**
Lakeisha Smith
Scottie Smith
1349 Clarianna Street
West Helena, AR 72390

| | | |
|---|---|---|
| Re: | Claim No.: | 259FRHQQ2245A |
| | Insured: | Lakeisha & Scottie Smith |
| | Policy No. : | 933854413ITV |
| | DOL: | 05/13/13 |

Dear Mr. and Mrs. Smith:

As you are aware, the Travelers Home and Marine Insurance Company (Travelers) has been researching the facts regarding the May 13, 2013, fire loss to determine whether it has obligations to indemnify you, or any other persons, for the damages to the insured location. After review of your policy and the facts that have come to Travelers' attention through the Examinations Under Oath of you, as well as information and documents you have submitted, and its own investigation, Travelers regrets that it is unable to provide payment for the damages you have claimed.

Under the circumstances that have come to light, your policy does not provide coverage for this loss. I have provided excerpts from the policy for your convenience and to aid in Travelers' explanation of the coverage determination. By referencing only certain portions of the policy, neither I, nor Travelers, intends, in any way, to waive any other terms or conditions of the contract of insurance, each of which remain in full effect.



EXHIBIT

2

Lakeisha Smith
Scottie Smith
January 20, 2014
Page 2

## DEFINITIONS

In this policy, "you" and "your" refer to the named "insured" shown in the Declarations. "We", "us" and "our" refer to the company providing this insurance. In addition, certain words and phrases are defined as follows:

5.    "Insured" means:

    a.    The person or organization shown as the named "insured" on the Declaration; and

    b.    Any person or organization while acting as real estate manager for you;

    Under both Section I and I, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

6.    "Insured location" means the "residence premises" shown in the Declarations.

## SECTION I – PROPERTY COVERAGES

## COVERAGE A - DWELLING

We cover:

1.    The dwelling on the "residence premises" shown in the Declarations, including structures attached to the dwelling; and

2.    Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

    This coverage does not apply to land, including land on which the dwelling is located.

Lakeisha Smith
Scottie Smith
January 20, 2014
Page 3

## COVERAGE D – LOSS OF USE

The limit of liability for Coverage D is the total limit for the 2 coverages
that follow.

1.   Fair Rental Value.  If a loss covered under Section I makes that
part of the "residence premises" rented to others or held for rental
by you not fit to move in, we cover its fair rental value.  Fair
rental value does not include any expenses that does not continue
while that part of the "residence premises" rented to others or
held for rental is not fit to live in.

Payment will be for the shortest time required to repair or
replace that part of the premises rented or held for rental.

## ADDITIONAL COVERAGES

1.   Debris Removal.  We will pay your reasonable expense for the
removal of:

a.   Debris of covered property if a Peril Insured Against that
applies to the damaged property causes the loss;

2.   Reasonable Repairs.  In the event that covered property is
damaged by a Peril Insured Against, we will pay the reasonable
cost incurred by you for necessary measures taken solely to
protect against further damage.  If the measures taken involve
repair to other damaged property, we will pay for those measures
only if that property is covered under this policy and the damage
to that property is caused by a Peril Insured Against.

This coverage does not:

a.   Increase the limit of liability that applies to the covered
property; or
b.   Relieve you of your duties, in case of a loss to covered
property, as set forth in SECTION I - CONDITION 2.c.

Lakeisha Smith
Scottie Smith
January 20, 2014
Page 4

## SECTION I – PERILS INSURED AGAINST

We insure for direct physical loss to the property described in coverages A, B and C caused by a peril listed below unless the loss is excluded in

## SECTION I – EXCLUSIONS.

1.   Fire or lightning.

We do not insure for loss caused directly or indirectly by any of the following.  Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

8.   Intentional loss, meaning any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, regardless of whether that "insured" committed or conspired to commit the act causing the loss.

## SECTION I – CONDITIONS

1.   Insurable interest and Limit of Liability.  Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

   a.   To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

   b.   For more than the applicable limit of liability.

2.   Duties After Loss.  In case of a loss to covered property, we have no duty to provide coverage under this policy unless there has been full compliance with the duties noted below.  These duties must be performed either by you or by an "insured" seeking coverage, if not you.

   c.   Protect the property from further damage.  If repairs to the property are required, you must:

Lakeisha Smith
Scottie Smith
January 20, 2014
Page 5

  (1)   Make reasonable and necessary repairs to protect
         the property; and
  (2)   Keep an accurate record of repair expenses;

d.   Cooperate with us in the investigation of a claim;
e.   Prepare an inventory of damaged household furnishings
     showing the quantity, description, actual cash value and
     amount of loss. Attach all bills, receipts and related
     documents that justify the figures in the inventory;
f.   As often as we reasonably require:

  (2)   Provide us with records and documents we request
         and permit us to make copies;

16.   Concealment or Fraud. With respect to all "insureds" covered
      under this policy, we provide no coverage for loss if, whether
      before or after a loss, one or more "insureds" have:

a.   Intentionally concealed or misrepresented any material fact
     or circumstance;
b.   Engaged in fraudulent conduct; or
c.   Made false statements;

relating to this insurance.

   Without waiving any other terms of the policy, or any other basis in fact or
law, Travelers has determined that coverage is not afforded to you for the fire loss for
the following reasons:

   Based upon the investigation, it appears more likely than not that the fire at
issue was intentionally caused by you and/or a resident relative of your household,
and that you have particular knowledge about the cause and/or origin of the fire that
has been intentionally concealed and/or misrepresented. Travelers has also learned
that you were not residents of the described premises at the time of and/or prior to
the loss and; therefore, the property does not qualify as a "residence premises," and is,
therefore, ineligible for coverage under the policy. Furthermore, the investigation has
revealed that there has been an intentional concealment, fraud and/or
misrepresentation concerning material facts and circumstances related to this claim,
as well as in connection with the application for insurance under this policy. Finally,

Lakeisha Smith
Scottie Smith
January 20, 2014
Page 6

you have failed to comply with the terms of the policy with regard to your duties after a loss, and have not provided all documents requested by Travelers concerning same.

These actions on your part relieve Travelers of any obligation to indemnify you for this fire loss. Moreover, Travelers also especially reserves the right to seek reimbursement from you for claim payments that it has made during the investigation of this claim, including, but not limited to, payments for the costs of investigation that became necessary because of misleading and/or misrepresented information provided by you. Travelers further reserves any and all rights and defenses allowed under the policy of insurance and Arkansas law and no action taken by it, its employees, agents and/or attorneys, is intended to be, nor should be, construed to be a waiver of any of its rights or defenses under the policy of insurance and/or Arkansas law.

Should you have any questions, or should you have any additional information or documentation to submit in support of your claim, please do not hesitate to contact me.

Sincerely,

Michael McCarty Harrison

MMH/lma

cc:

Mr. Koby D. Smith
Technical Specialist
Travelers Insurance
P.O. Box 681746
Franklin, TN 37086-1746

"Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison."